### 8320

### GAMBLE v. METROPOLITAN LIFE INS. CO.

1. INSURANCE—PLEADINGS—FRAUD—ESTOPPEL.—In an action by the husband to recover the insurance on the life of his wife, under allegations that the policy was procured by misrepresentation, it was competent to show that the husband signed the application with the wife, which contained answer concealing from the defendant that she was suffering from a fatal malady which was not known to her but was known by the husband.

   MR. JUSTICE FRASER *dissents.*

2. IBID.—PRINCIPAL AND AGENT.—In such case where the husband joins with the wife in signing the application, pays the premium and takes receipt therefor, he may be regarded as her agent and what he knows of her condition may be imputed to her.

Before WATTS, J., York, Fall term, 1911. Reversed.

Action by James M. Gamble against Metropolitan Life Insurance Co.    Defendant appeals.

*Messrs. Elliott & Herbert,* for appellant, cite: *As to alleging fraud:* 75 S. C. 338; 65 S. C. 184; 9 Ency. P. & P. 686.   *If answers to questions are false policy is void:* 28 C. C. A. 370; 28 S. C. 437; 10 L. R. A. 666; 22 L. R. A. 325; 47 S. E. 940; 65 Am. St. R. 887; 130 Id. 356; 62 L. R. A. 774; 10 Am. St. R. 240; 53 L. R. A. 193; 25 Am. St. 621; 91 U. S. 510; 61 L. R. A. 337; 7 C. C. A. 579; 53 Am. St. R. 757; 69 S. E. 936; 38 Wash. L. R. 753.

*Messrs. Dunlap & Dunlap,* contra, cite: *It is conceded misrepresentation knowingly by insured avoids policy:* 61 S. C. 338.

September 20, 1912.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The defendant company issued a policy of $500 on February 10, 1910, for the benefit of the plaintiff on the life of Maggie Gamble, his wife, who died June 14, 1910.    The answer in this suit on the policy sets up the defense that the policy was obtained by representations in the application which were false in several material particulars.

The plaintiff, as beneficiary, signed the application for insurance with his wife, and in the application the following declaration and agreement appears: "And it is further declared and agreed that the foregoing statements and answers, and also the statements and answers on the next page hereof in answer to the medical examiner, are correct and wholly true, that they shall form the basis of the contract of insurance if one be issued, and that if they are not thus correct and wholly true the policy shall be null and void."

·On the trial the specific untrue representations relied on were the statements made in the application for the policy that the insured was in sound health ·and that the last medical attention was in 1908 for miscarriage, whereas the evidence of her attending physician was that he attended her in November, 1909, that she was suffering not only from miscarriage, but an enlarged heart and Bright's disease. Dr. Kirkpatrick, the physician, further testified that he told the plaintiff at the time of the nature of his wife's disease, but refrained from telling her at her husband's request. The plaintiff testified that the physician did not inform him that his wife had heart disease or Bright's disease until some time after the policy was taken out.

The Circuit Judge directed a verdict for the plaintiff, holding that the answer alleged fraud on the part of the insured and not the beneficiary, and, therefore, the fraud of the husband could not avail the defendant; and that there was no proof that the insured knew of any disease at the time she represented herself to be in sound health.

If the answer be liberally construed, as all pleadings should be, to meet the justice of the case, we think the answer should be held to admit of proof of fraud not only against Mrs. Gamble, but against the plaintiff also.

But even if the answer be strictly construed as charging misrepresentation against Mrs. Gamble and not against the plaintiff, and if it be conceded that Mrs. Gamble was not aware of the fatal disease from which she was suffering and was in fact innocent of intentional wrong, yet there is a deeper question which the plaintiff must meet. If he knew of his wife's fatal malady, and concealed it while participating in procuring the insurance for his own benefit, can he be allowed to say that his wife was ignorant of the imposition, when common honesty required him to inform her of her condition, if he wished to insure her life, so that she could speak the truth in her application? His request to the physician not to tell Mrs. Gamble

of her condition was natural and commendable as a means of saving her from suffering, but it is not permissible that the plaintiff should pervert that sentiment by using it as a means of allowing his innocent wife to impose on an insurance company for his benefit. The plaintiff is now seeking his own interests, and he cannot·have the benefit of his wife's lack of knowledge of her malady when it was known to him—he cannot be allowed to wilfully conceal and then have the benefit of the concealment and the imposition innocently practiced by another because of his concealment. If he wished her life insured for his benefit, it was his imperative duty to inform her so that she could speak the truth. The law will not allow him to deny that his wife knew that which common honesty required him to tell her before procuring insurance. As between the plaintiff and the insurance company, the law imposed upon him the duty of informing his wife of her condition to the end that she should not impose upon the insurance company in his behalf, and it will not allow him to say, in enforcing his claim, that he did not perform the duty.

In addition there was ground for the jury to infer that the plaintiff was the agent of his wife in the transaction and that on that ground his knowledge should be imputed to her. Mrs. Gamble was a very ill woman, the plaintiff became a participant in the insurance transaction by signing the application, paying the premium, and taking a receipt for it; and it is common knowledge that married women very rarely enter into such transactions except through the agency of their husbands.

Under these principles, there was abundant evidence to go to the jury on the issue of false representations set up in the answer. The plaintiff testified that Dr. Kirkpatrick did not inform him that his wife had organic heart disease and Bright's disease until after the policy had been issued. Dr. Kirkpatrick, on the contrary, testified that he gave him the information in November or December, 1909.

In addition to this, the physician testified that he attended Mrs. Gamble for this illness in November and December, 1909, whereas Mrs. Gamble stated in her application that she had not been attended by any physician since November, 1908.

For these reasons the case should have been submitted to the jury.

Reversed.


MR. JUSTICE WATTS *disqualified.*


MR. JUSTICE FRASER, *dissenting.* I cannot concur in the opinion of the majority of the Court in this case. I know it is not always necessary to allege fraud in order to prove it, but when fraud is alleged, it ought to be proved as alleged.

It seems to me that the fraud alleged here is the fraud of the insured and the proof abundantly shows that Mrs. Gamble knew nothing of the two fatal diseases with which she was suffering. I see no proof, so easy to have been made by the defendant, if true, that the plaintiff procured the insurance, whatever the probabilities may be.