18434

Dr. Willis S. HOOD, Respondent, v. SECURITY INSURANCE CO. OF NEW HAVEN, Appellant.

(145 S. E. (2d) 526)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Appellant,*

*Messrs. Wyche, Burgess, Freeman & Parham,* of Green-ville, *for Respondent,*

December 8, 1965.

LEWIS, Justice.

The plaintiff brought this action to recover benefits pro-vided under a policy of disability insurance issued to him by the defendant. The defendant denied liability contending that the plaintiff made fraudulent misrepresentations in procuring the issuance of the policy and, subseuently, in obtaining its reinstatement after it had lapsed for nonpayment of pre-miums. During the trial of the case both parties made timely motions for a directed verdict, each contending that the evi-dence conclusively resolved the foregoing issue in its favor. These motions were denied and this issue was submitted to the jury to determine, resulting in a verdict for the plaintiff, from which the defendant has appealed. The basic issue for determination, under the exceptions of the defendant and an additional sustaining ground filed by the plaintiff concerns the correctness of the rulings by the lower court on the fore-going motions. Additional questions concern alleged error in the instructions to the jury and the refusal of the lower court to allow the defendant to amend its answer during the trial.

The first question for determination under the exceptions and additional sustaining ground, is whether the evidence conclusively resolved the issue relating to the alleged fraudu-lent misrepresentations so as to entitle either party to a di-rected verdict in its favor, or whether the trial judge was correct in submitting the issue to the jury for determination.

The plaintiff, upon the solicitation of an agent of the defendant, made application to the defendant on October 1, 1962, for a policy of disability insurance. The policy was issued under date of November 1, 1962, without medical examination and delivered to the plaintiff either on that date or a day or so thereafter. The plaintiff inadvertently failed to pay the next premium when it became due on November 1, 1963, nor within the thirty day grace period allowed, and the policy lapsed on December 1, 1963, for nonpayment of premium. An application for reinstatement was signed by the plaintiff on December 10, 1963, and the policy was thereafter reinstated.

The plaintiff subsequently became totally disabled from a subarachnoid hemorrhage of the brain, resulting in damaged vision and partial paralysis of the left side of the body. Claim was filed for the monthly benefits provided by the policy, and this action followed a denial of liability by the defendant.

The defendant conceded that the policy in question was issued, the premium paid, and that plaintiff was disabled within the meaning of its terms; but sought to avoid payment upon the ground that plaintiff fraudulently misrepresented and concealed material facts relative to the condition of his health when he applied for the insurance and in an application for reinstatement of the policy. Whether or not plaintiff was guilty of the alleged fraudulent misrepresentations was the basic question in the trial of the case in the lower court. We find no dispute in the material facts and the applicable legal principles are well settled.

It is properly conceded in this case that the answers concerning the health of plaintiff were representations, not warranties. In order to void a policy under such circumstances, it is well settled that the burden of proof rests upon the insurer to show by clear and convincing testimony not only that the statements complained of were untrue but, in addition, that their falsity was known to the applicant, that they were material to the risk, and relied on by the insurer, and that they were made with the intent to

deceive and defraud the company. *Small v. Coastal States Life Ins. Co.,* 241 S. C. 344, 128 S. E. (2d) 175; *Ellis v. Capital Life & Health Ins. Co.,* 229 S. C. 388, 93 S. E. (2d) 118; *Metropolitan Life Ins. Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201 (and cases therein cited).

Although interrelated, the factual issues relative to the original application and the one for reinstatement of the policy are best understood by reviewing them separately. The written application signed by plaintiff, and upon which the policy was issued, contained, among others, the following questions and answers:

"6. To the best of your knowledge, are you now in good health and free from any physical impairment or disease? Yes.

"7. To the best of your knowledge, have you ever had cancer or malignant growth? No."

The defendant contends that plaintiff knowingly falsified in answering that he did not have cancer. The plaintiff is a radiologist by training and profession and was engaged in the practice of radiology with Dr. Whitaker, his partner, at Greenville, South Carolina. While the two were in swimming at the beach about the middle of October 1962, Dr. Whitaker noticed a mole on the back of plaintiff's right shoulder and told plaintiff that he didn't like the looks of it and that he should have something done about it, to which plaintiff replied that it (the mole) didn't amount to anything. This conversation occurred after the application for the policy was signed on October 1, 1962.

After Dr. Whitaker noticed the mole on plaintiff's shoulder, he, without the knowledge of plaintiff, made an appointment with Dr. White, a surgeon, to see plaintiff on November 12, 1962. As a result of this appointment the plaintiff saw Dr. White on November 12th, at which time the mole was removed and sent to a pathologist for examination. The pathologist reported that it was malignant and plaintiff was first informed of that fact on November 14, 1962, after

which he went to Emory University Hospital where further surgery and a skin graft were performed on the affected area of the shoulder. The doctors diagnosed the mole as a malignant melanoma which could have become malignant within a month prior to its removal.

The medical testimony showed that, while the mole looked somewhat suspicious, it was impossible to tell from appearance whether or not it was malignant.

The defendant takes the position, under the foregoing circumstances, that the statement of the plaintiff in the application that he did not have cancer was false; and that the suspicious appearance of the mole to one trained in the detection and treatment of cancer, as was the plaintiff, was sufficient to put him on notice of the likelihood of a malignancy so as to constitute his negative answer to the question in the application a fraudulent misrepresentation of a fact material to the risk, thereby voiding the policy.

The representation by the plaintiff that he had never had cancer cannot be held under the present facts to preclude recovery. The mole had been present for a number of years and had not given the plaintiff any trouble. It was located on the posterior portion of the shoulder and could not be seen by plaintiff unless he used a mirror. Even then the medical testimony was that the appearance of the mole would not show whether it was malignant. Additionally, the testimony was to the effect that the growth of this particular type of cancer was unusually rapid and its inception was possible within one month prior to its removal on November 12th, which would have been after the application was signed on October 1st. Although there is testimony that plaintiff knew he had a mole on his shoulder, there is a total absence of testimony to show that he knew it was malignant or that he had any reason to suspect such when the application was signed on October 1, 1962. The foregoing testimony affords no basis for a finding that the plaintiff knowingly and with intent to defraud the company made a false answer to the

question in the application relative to whether he had ever had cancer.

The defendant contends however, in any event, the plaintiff misrepresented the condition of his health in his application for reinstatement of the policy. The policy lapsed on December 1, 1963, for nonpayment of the annual premium due on November 1, 1963. The application for reinstatement was signed by plaintiff on December 10, 1963. In this application the plaintiff stated as follows:

"I certify that the answers to the following questions are true and complete, to the best of my knowledge or belief.

"1. Since the date of lapse,

"(a) Have you had any illness or injury? No.

"(b) Have you consulted or been prescribed for by any physician or surgeon? No.

"(c) Have you applied to any insurance company for life, accident or health insurance which was not issued exactly as requested? No.

"2. Are you now in good health? Yes."

Question No. 1 of the reinstatement application referred to the period after the lapse of the policy, that is, the period from December 1, 1963, until the application was signed on December 10, 1963. No contention is made that the plaintiff's answers to Question No. 1 were incorrect.

The burden of defendant's argument relative to the reinstatement application concerns plaintiff's answer to Question No. 2 in which he represented that to the best of his knowledge or belief he was in good health on December 10th, 1963, when he signed the application. The defendant contends that the representation that the plaintiff was in good health was false because of admitted prior illnesses, that the plaintiff knew of its falsity and made it with intent to deceive the company.

> Good health does not mean that the applicant is in a condition of perfect health. "The term 'good health', when used in a policy of life insurance, means that

the applicant has no grave, important, or serious disease, and is free from ailment that seriously affects the general soundness and healthfulness of the system." *Nix v. Sovereign Camp, W. O. W.,* 180 S. C. 153, 185 S. E. 175.

It is undisputed that the plaintiff lost considerable time from his work because of illness during the period from the date of the policy to the date of the reinstatement. Plaintiff's first illness after the issuance of the policy was in connection with the removal of the malignant melanoma from his shoulder. Surgery was performed for the removal of this growth and he was disabled therefrom for about 6 to 8 weeks. The medical testimony shows that the surgical removal of the melanoma was completely successful, that plaintiff was cured of the malignancy, and that he was so informed by the doctors who treated him.

Some time after the removal of the malignancy, the plaintiff was disabled for about three weeks from a torsion or twisting of the spermatic cord, and subsequent to that for about three to four weeks with epididymitis. All of the medical testimony was to the effect that these ailments were not permanent, that the plaintiff completely recovered therefrom, and was in good health on December 10, 1963, when he signed the reinstatement application.

It is not contended that the present disability of the plaintiff is related in any way to any of his prior illnesses.

The plaintiff was asked to certify as to whether he was in good health only to his best knowledge or belief. The testimony is uncontradicted that plaintiff had recovered from his illnesses, had returned to work, and was in good health when he signed the reinstatement application. We find in this record no showing that the plaintiff knowingly falsified as to the state of his health with intent to deceive the defendant into reinstating the policy.

The defendant argues however that honesty, fair dealing and good faith on plaintiff's part required that he disclose in the reinstatement application the

illnesses suffered by him since the issuance of the policy, so that the company could determine whether or not he was in good health and whether or not under the circumstances it wished to reinstate the policy. In other words, defendant contends that the failure of plaintiff to voluntarily disclose the prior illnesses amounted to a fraudulent concealment of facts material to the risk.

The reinstatement application did not specifically inquire as to the existence of any prior sickness that plaintiff may have suffered, except *since the lapse of the policy.*

We have recognized the rule that, ordinarily "insurer's failure to inquire into facts it considers material to the risk prior to issuance of the policy estops insurer to object to applicant's concealment unless the concealment is tainted with a fraudulent intent." *Graham v. Aetna Insurance Co.,* 243 S. C. 108, 132 S. E. (2d) 273, 100 A. L. R. (2d) 1352. See: *Dixon v. Standard Mutual Life Ins. Co.,* 206 S. C. 241, 33 S. E. (2d) 516; 29 Am. Jur., Insurance, Section 695; 45 C. J. S., Insurance, § 473(3).

There is no showing that plaintiff fraudulently concealed his prior sickness. The testimony is uncontradicted that, when plaintiff signed the reinstatement application, he had recovered from every illness now in question so that they did not seriously affect the general soundness and healthfulness of his system. The fact, that the reinstatement application contained an inquiry as to illnesses for one period and not for others, would give rise to a reasonable assumption that the applicant was not required to list illnesses for the period about which no such inquiry was made and which did not then seriously affect his health. The plaintiff was simply silent and, under the present facts, "mere silence on the part of the assured as to a matter not inquired of is not to be considered such a concealment as to avoid the policy." *Graham v. Aetna Ins. Co., supra.*

There has been no showing that the plaintiff knowingly falsified the answers to the questions in either the original or reinstatement applications with intent to deceive the defendant, and the lower court should have granted plaintiff's motion for a directed verdict upon that ground. Since we have concluded that a directed verdict should have been granted in favor of the plaintiff, it becomes unnecessary to consider the several exceptions alleging error in the charge to the jury.

The remaining question concerns the refusal of the lower court to allow the defendant to amend its answer during the trial.

The last witness to testify in the trial of the case was Dr. Charlton Armstrong. He testified that he performed a vas ligation upon the plaintiff in June 1962, prior to the date of the original application for the policy. The plaintiff failed to list this surgical ligation in answer to a question in the policy application relative to the medical or surgical treatment received by him during the preceding five years. The answer of the defendant did not allege the foregoing as a defense and, at the conclusion of the testimony and after the witnesses were excused, a motion was made to amend the answer to allege, as an additional ground of fraud in the procurement of the policy, the failure of the plaintiff to disclose the surgical ligation allegedly performed in 1962. Error is assigned in the refusal of the lower court to allow the amendment.

The power of the court under Section 10-692(d) of the 1962 Code of Laws to grant an amendment during trial is limited to such as "does not change substantially the claim or defense." *Greenville Community Hotel Corp. v. Smith,* 230 S. C. 239, 95 S. E. (2d) 262.

The effect of the proposed amendment was to add an additional ground of fraud as a defense to the action after the testimony had been concluded and the witnesses excused. The defendant had authority before trial to obtain all rele-

vant medical and hospital records, including those of Dr. Armstrong, from which, if pursued, the information relative to the surgical ligation could have been obtained. In fact, the record strongly, if not conclusively, indicates that Dr. Armstrong testified as to the date of the surgical ligation from his records and that he mistakenly read the date as "June 1962" instead of "January 1963", the latter date being after the policy was issued. Under the foregoing circumstances, the trial judge properly refused to allow the amendment.

The judgment of the lower court is accordingly affirmed.

TAYLOR, C. J., and Moss, BUSSEY and BRAILSFORD, JJ., concur.