18655

Kathryn B. SMILEY, Respondent, v. WOODMEN OF THE WORLD
LIFE INSURANCE SOCIETY, Appellant
(154 S. E. (2d) 834)

*Messrs. Wright, Scott, Blackwell & Powers*, of Florence, *for Appellant,*

*Messrs. Nettles, Thomy & Floyd*, of Lake City, *for Respondent,*

May 25, 1967.

BUSSEY, Justice.

In this action, a suit on a one thousand dollar life insurance policy, issued by appellant on the life of one William A. Smiley, the appeal is from a refusal of the lower court to grant appellant's motions for nonsuit, directed verdict or judgment *non obstante veredicto*. The respondent, Kathryn B. Smiley, is the wife of the insured and the beneficiary named in the policy.

The appellant's denial of liability under the policy was based on the contention that the application therefor contained false and fraudulent representations. No issue of warranty is involved.

It is well settled in this state that in order to void a policy of insurance on the ground that fraudulent representations were made in the procuring of such policy, the burden of proof rests upon the insurer to show, by clear and convincing evidence, not only that the statements complained of were untrue, but in addition thereto that their falsity was known to the applicant, that they were material to the risk, were relied on by the insurer, and that they were made with intent to deceive and defraud the company. *Small v. Coastal States Life Ins. Co.,* 241 S. C. 344, 128 S. E. (2d) 175; *Metropolitan Life Ins. Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201; *Hood v. Security Ins. Co. of New Haven,* 247 S. C. 71, 145 S. E. (2d) 526.

As the cardinal question in this case is whether the allegedly false statements made by the applicant were made with intent to deceive and defraud the appellant, we quote the following applicable principles of law from *Johnson v. New York Life Ins. Co.,* 165 S. C. 494, 164 S. E. 175,

"Finally, the intent with which representations or misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive. *Huestess v. [South Atlantic Life] Insurance Co.,* 88 S. C. 31, 70 S. E. 403."

It is unnecessary to cite authority for the elementary proposition that in considering whether the lower court was correct in denying appellant's several motions, the evidence, together with all the inferences reasonably deducible therefrom, has to be viewed in the light most favorable to the respondent. Viewed in the light of this elementary principle, the facts and inferences reasonably deducible therefrom are as follows.

In February, 1964, the insured Smiley, then aged 19, became ill and consulted his family physician, Dr. Timmons, who referred him to Dr. F. B. Lee of Florence for a possible tonsillectomy. Dr. Lee made a preliminary diagnosis of leukemia and referred him to the South Carolina Medical College Hospital in Charleston, where the diagnosis was confirmed. He remained in the hospital for six days, where, under treatment, he showed marked improvement and all symptoms which would have been known to, or been observable by, Smiley, subsided. He thereafter returned to full time employment at his regular job with a textile concern, but was continued `as an outpatient of the Medical College Hospital, going there at intervals of four to six weeks for periodic checkups. As treatment he was taking a certain pill daily which was prescribed for him.

Although a diagnosis of leukemia had been made and the diagnosis was known to members of Smiley's family, Smiley himself had no knowledge of the diagnosis, such fact being carefully kept from him. He was a very religious, conscientious, honorable man and he and his family, as well

as certain close friends who knew the situation, prayed diligently for his complete recovery. To all outward appearances his recovery was complete, so much so that even his family doctor doubted the accuracy of the diagnosis made in Charleston.

From February, 1964, until after the application for insurance in April, 1965, Smiley, except for his periodic visits to the Medical College and the treatment of a sore throat by Dr. Timmons in March, 1965, saw no physician and was not admitted to any hospital. On a checkup visit to the hospital in March, 1965, examination revealed to the physicians certain symptoms which were indicative to them of a worsening condition, but there is no evidence that their findings were communicated to Smiley, who was still unaware of the diagnosis which had been made in 1964.

The application for insurance is dated April 20, 1965, and the policy was issued on April 28th. During the month of April Smiley was working regularly, carrying on all normal activities of life and playing baseball every Saturday afternoon. He had gained twenty pounds in weight since he was hospitalized in February, 1964, and appeared to be a healthy, well nourished male, weighing 170 pounds. Approximately a month after the issuance of the policy Smiley's condition started to deteriorate and he was again admitted to Medical College Hospital on May 25th, and discharged on June 2nd. Following this discharge, he returned to normal activities but had to be again hospitalized on July 17th, and died of leukemia on July 27, 1965. He did not solicit the insurance, but was solicited by an agent of the appellant who came to his home for that purpose.

Appellant's contention of fraudulent misrepresentation is based on questions and answers contained in the application signed by Smiley, as follows:

"6. Have you ever been under care or treatment in any hospital or similar institution?

"A. No.

"7. Have you within the past ten years had any mental or bodily disease or infirmity or within that time consulted a physician?

"A. No.

"8. Do you regularly take medication? If so, state below the name of drug and condition requiring it.

"A. No.

"9. Are you now in good health?

"A. Yes."

Other pertinent parts of the application are that it listed Dr. Timmons of Lake City, South Carolina, as Smiley's personal physician. In answer to a question as to whether Smiley gained weight during the past year, the answer was given that he had gained about twenty pounds, "due to more rest". Also contained was an authorization for Dr. Timmons or any other doctor to furnish the appellant any and all desired information with respect to the applicant.

To return to the questions and answers relied upon by appellant, the evidence would support the inference that Smiley did not know the answers to questions 8 and 9 were incorrect. As to question 7, since Smiley was only 20 years old at the time, the mere listing of Dr. Timmons as his personal physician indicated that he had, in fact, consulted a physician  about some disease or infirmity within the past ten years. As to question 6, there is direct evidence that the agent was told that Smiley had been to the hospital in Charleston, even though the agent wrote "no" as an answer. No effort was made by appellant to ascertain from Dr. Timmons, or otherwise, Smiley's true condition.

On his first call on Smiley the agent did not complete the application but took down on a sheet of paper all pertinent information obtained from Smiley. The agent, a day or two later, returned with the completed application which Smiley then signed, paying the first premium. The agent testified that Smiley read the application before signing it but, on cross examination, admitted that he had assured Smiley that the application had been completed in accordance

with the information previously given, and it is at least inferable from his testimony that based on this assurance Smiley did nothing more than glance at the same. The sheet of paper on which the information was initially taken down was not offered in evidence. Although the agent denied it, there is evidence that Smiley told the agent on his first visit that he had been to the hospital, that he had had certain tests made, that he was feeling much better, and that he thought he was fine now. Incidentally, there is medical evidence to the effect that, under the circumstances, Smiley could have well believed that he was getting well as his condition was excellent. The agent admitted that Smiley told him that he was taking vitamins. Since Smiley was unaware of his condition, which was carefully kept from him, it is at least inferable that he, in truth, thought the pills which he was taking were nothing more than vitamin pills.

The evidence as to what Smiley told the agent on his first visit is that of Mrs. Smiley, the respondent, who was present in the room with Smiley and the agent for only a portion of the time. Bearing on whether there was any fraudulent intent on the part of Smiley is the fact that when solicited by the agent he could have obtained insurance up to $15,000 without a medical examination. The amount procured was only one thousand.

From all of the foregoing facts, we think it clear that more than one reasonable inference could be drawn as to whether Smiley made any misrepresentations with intent to deceive and defraud the appellant. We think the evidence was abundantly sufficient to make the issue a jury question.

Appellant, relying on the case of *Gamble v. Metropolitan Life Ins. Co.,* 92 S. C. 451, 75 S. E. 788, 41 L. R. A., N. S., 1199, contends that the lower court should have granted its motions because the respondent knew Smiley had leukemia; knew that the applicant did not know; knew that the agent was there taking an application for life insurance and that it was her duty to divulge the true condition to the agent.

In the *Gamble* case the plaintiff was the husband of the insured and the beneficiary named in the policy issued at a time when she had a fatal illness, it being contended that such fact was known to the husband, if not the wife. There was a directed verdict for the plaintiff which was reversed and the cause remanded for a jury trial. Under the circumstances of that case, the court did hold that the law imposed upon the husband the duty of informing his wife of her condition to the end that she would not impose upon the insurance company, in his behalf, and it would not allow him to say, in enforcing his claim, that he did not perform that duty.

The facts in that case are, however, vastly different from the facts of the instant case. There the husband was an active participant in procuring the insurance. He signed the application along with his wife, paid the premium, and took a receipt. Evidence on behalf of the insurer was to the effect that the application which the husband signed contained statements which the husband knew to be false at the time he was signing the application along with his wife. The holding of the court was additionally premised on the ground that it was reasonable to infer that the husband was the agent of his wife in the transaction, and that, therefore, his knowledge about her condition should be imputed to her.

In the instant case it is admitted that respondent knew of the diagnosis of which her husband was unaware. While she knew of the diagnosis, she knew that her husband had apparently achieved a very remarkable recovery or remission. Unlike the husband in the *Gamble* case, there was no active participation whatever on her part in procuring the insurance which was solicited by the agent of appellant. She was in the room with her husband and the agent only briefly and she knew that her husband had told the agent about going to the hospital.

When asked in the course of examination why she did not disclose to the agent what she knew, she testified that the agent was asking the questions and her husband was giving

all the answers he knew and giving them correctly; that she figured he would have to have a physical examination, and if there was anything really wrong with him at that time, appellant would check on it and not issue the policy. The agent came to see her husband, not the respondent, and her contact with the agent, whom she did not know, was relatively brief. Under all the circumstances, she thought, that the application would be refused anyway, and that she did not need, in this brief interlude, to disclose to a stranger in the presence of her husband, what she and other members of the family had been carefully keeping from him, was entirely logical. The record does not disclose that she even knew of the actual issuance of the policy, or that she was named beneficiary, until after the death of her husband. He had no other insurance, and there is nothing in the record to indicate that she had any particular knowledge about insurance matters. The lower court, under these circumstances, would not have been warranted in holding, as a matter of law, that respondent was derelict in her duty or guilty of fraud which would preclude her recovery.

We conclude that the exceptions of the appellant are without merit, and the judgment of the lower court is accordingly,

Affirmed.

Moss, C. J., Lewis and Brailsford, JJ., and G. Badger Baker, Acting J., concur.