526 S.E.2d 253
**Melvin E. LANHAM, Appellant,**
v.
**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, INC., Respondent.**
**No. 3097.**
Court of Appeals of South Carolina.
Heard Nov. 3, 1999.
Decided Jan. 10, 2000.
Rehearing Denied April 1, 2000.

---

**2.** Varvil left messages on Victim's voice mail on August 7, 8, 14, 16, and 18 of 1994.

James B. Richardson, Jr. and J. Layne Birdsong, of Svalina, Richardson & Larson, of Columbia, for appellant.

Hoover C. Blanton and Ruskin C. Foster, of McCutchen, Blanton, Rhodes & Johnson, of Columbia, for respondent.

HUFF, Judge:

Melvin Lanham appeals the summary dismissal of his action against Blue Cross and Blue Shield of South Carolina. In the action, Lanham alleged breach of contract and bad faith in the cancellation of his health insurance policy. The circuit court judge granted Blue Cross's motion for summary judgment on the grounds Lanham knew of his liver condition and misrepresented his health status at the time he submitted his application or alternatively that Lanham had a long-standing problem with his liver which materially affected Blue Cross's acceptance of the risk. We reverse.

## FACTS

On February 13, 1986, Melvin Lanham went to his doctor for an annual physical. The physical exam revealed Lanham's liver was swollen. Lanham subsequently received a letter indicating a blood test had revealed a slight elevation in liver function tests. In the letter, the doctor stated "I do not feel that any further treatment or investigation is indicated at this point in time. I do think that you need a periodic evaluation of your liver function studies and would suggest that we obtain a blood test on you in about six months ." On September 11, 1986, Lanham returned for the follow-up blood test. The second test also indicated an elevated SGOT and SGPT level. Other values associated with liver function were normal. The doctor advised him to follow up with periodic blood tests.

On April 26, 1988, Lanham returned for another annual physical. The doctor's report from that visit states: "The patient was followed by Dr. Harold Miller for a number of years and has been told in the past that he has had a slight elevation of his hepatic enzymes. He underwent extensive studies in reference to this. The exact studies are unknown by the patient whether he had a hepatitis profile, etc." After more blood tests, Lanham received a letter from his doctor stating: "Your liver function studies have markedly improved since last year and almost are back to completely normal. Your kidney function is normal." The doctor told Lanham he

"did not feel that he needed to have any further studies or tests done at that point in time."

On April 29, 1991, Lanham applied for health insurance coverage from Blue Cross. As part of his application, he completed an extensive questionnaire regarding his past medical history. On the questionnaire, Lanham checked yes beside the question regarding digestive system problems (including liver problems) and underlined gastritis, but did not provide additional information regarding his liver.[1] On July 15, 1991, Blue Cross issued a policy to Lanham with a rider excluding coverage for a hip problem.

In November of 1991, Lanham had blood work done in connection with an unrelated application for life insurance. On November 6, 1991, he went back to his doctor and advised him that based on the lab work, he had been turned down for life insurance. The doctor repeated the blood work and discovered one of Lanham's enzymes had increased to a point requiring further investigation. He referred Lanham to a specialist and suggested Lanham consider having a liver biopsy.

In December of 1991, the specialist diagnosed Lanham with hepatitis C. In July of 1992, Blue Cross notified Lanham it had canceled his health insurance due to alleged fraudulent misrepresentations in his application. On November 4, 1992, Lanham filed suit asserting breach of contract and bad faith refusal to pay. Blue Cross answered and counterclaimed asserting it would not have issued the policy but for misrepresentations in the application. The suit was dismissed with leave to restore in 1994 and restored on March 2, 1995.

Blue Cross moved for summary judgment on January 21, 1997. On January 24, 1997, Lanham requested discovery of various items including Blue Cross's underwriting guidelines. Blue Cross moved to quash the discovery request asserting its

---

1. This question asked:

Have you or any other person listed on the application in the past ten (10) years had a diagnosis of, advice for, indication of, symptoms related to, treatment for, or accident or injury related to any of the following systems, diagnoses, disorders, diseases, conditions, or symptoms?

D. Digestive system, including ulcer, gallbladder gastritis, intestinal problem, colitis, hemorrhoids, hernia, pancreas, liver or spleen.

underwriting standards are protected as trade secrets. On February 3, 1997, Lanham made a second motion to compel discovery.

During the hearing on Blue Cross's motion for summary judgment, Blue Cross relied heavily on an unpublished opinion by this court. Blue Cross also presented an affidavit from an employee who stated the insurer would not have issued Lanham's policy had it known of Lanham's liver problems. Lanham argued he had not been allowed adequate discovery and the question of materiality was a jury issue. Lanham renewed his motion to compel discovery. Without ruling on Lanham's discovery motion, the court granted summary judgment in favor of Blue Cross. Lanham's subsequent motion to alter or amend was denied.

### *LAW/ANALYSIS*

On appeal, Lanham argues 1) there is a genuine issue of fact regarding whether he made a material false statement on the application, or if false, whether the statement was made with the intent to deceive, and 2) he did not have the opportunity for adequate discovery prior to the granting of the motion for summary judgment.

Summary judgment is available when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the evidence and the inferences drawn from it must be viewed in the light most favorable to the non-moving party. *See Café Associates, Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). *See also* Rule 56, SCRCP.

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Wells v. City of Lynchburg,* 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct.App.1998). Summary judgment is inappropriate "even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusion drawn from those facts. All ambiguities, conclusions, and inferences arising in and from the evidence must be construed most strongly against the movant." *Clyburn v. Sumter Co. Sch. Dist. 17,* 311 S.C. 521, 522–523, 429 S.E.2d 862, 863 (Ct.App.1993) (citations omitted).

Title 38 of the South Carolina Code regulates insurance companies operating in this state. S.C.Code Ann. Section 38–71–40 (1989) provides:

> The falsity of any statement in the application for any policy covered by this chapter does not bar the right to recovery thereunder unless the false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.[2]

As the trial court found, according to the plain language of the statute, an insurer must prove one of the following situations to justify withholding payment to an insured: 1) a false statement made with actual intent to deceive; *or* 2) a false statement materially affecting the insurer's acceptance of the risk; *or* 3) a false statement materially affecting the hazard assumed by the insurer.

█ Viewing the evidence, as we are required to do, in the light most favorable to Lanham, we find a material question of fact exists as to whether Lanham intended to deceive Blue Cross when he answered question 17D on the application. Lanham checked yes in answer to question 17D. This arguably was sufficient. The thoroughness with which Lanham completed the applications for himself and his family is some evidence Lanham did not intend to deceive Blue Cross. In fact, Lanham's wife was turned down for insurance because of the disclosures made on her application. Lanham received a policy with a rider excluding any coverage for hip-related problems. There is a genuine issue of fact for a jury as to whether Lanham omitted information about his liver with the actual intent to deceive Blue Cross.

█ The trial court found Lanham's answer on the insurance application was material as a matter of law. We disagree. Blue Cross submitted an affidavit from Sandra Laney, a Blue Cross underwriting manager, stating the alleged false statement materially affected Blue Cross's acceptance of the risk. However, such a statement is not conclusive, but is merely part of the factual basis used to determine materiality. In this instance, the issue of materiality is more properly

2. Other jurisdictions including California, Louisiana, New Hampshire, Pennsylvania, and Vermont, have or had identically worded statutes.

resolved by a jury. The question of materiality is "for the trier of fact unless the record is such that the trial court must reach the conclusion that the statement materially affected the acceptance of the risk." *Taylor v. Metropolitan Life Insurance Co.,* 106 N.H. 455, 214 A.2d 109, 112 (1965). *See Meyer v. Blue Cross Blue Shield,* 500 N.W.2d 150 (Minn.Ct.App.1993) (materiality is a fact question based on the objective facts of the particular case).

There are enough facts in this case from which a jury could conclude that Lanham made false statements with the intent to deceive Blue Cross. There are enough facts in this case from which a jury could conclude that Lanham made false statements that materially affected Blue Cross's decision to accept the application. Jurors could also decide Lanham did not intend to deceive Blue Cross or that his statements were not material to Blue Cross's decision. On this record the determination should belong to the jury, not the judge. *See Meyer,* 500 N.W.2d at 154.

■ The lower court and Blue Cross relied on an unpublished opinion of this court, *Bon Secours–St. Francis Xavier Hospital v. Blue Cross and Blue Shield of South Carolina,* Op. No. 95–UP–251, filed October 2, 1995. However, it should be noted unpublished opinions have no precedential value. Rule 220(a), SCACR.[3]

Because the lower court did not hear Lanham's motion to compel, we remand that issue to the trial court for determination.

Accordingly, the case is

**REVERSED and REMANDED.**

CURETON and HOWARD, JJ., concur.

---

**3.** During oral argument, Blue Cross argued Rule 220(a), SCACR, does not reference or apply to the unpublished opinions of this court. However, this court formerly issued memorandum decisions which were not published. Now, our opinions which are not printed in the advance sheets are identified as "unpublished" and are given docket numbers with the designation "UP". *See* Paula Gail Benson and Deborah Ann Davis, *A Guide to South Carolina Legal Research and Citation* 99 (1991). Rule 220(a) applies to these unpublished opinions.