563 S.E.2d 331

**Melvin E. LANHAM, Respondent,**

v.

**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, INC., Petitioner.**

No. 25458.

Supreme Court of South Carolina.

Heard March 5, 2002.

Decided May 6, 2002.

---

358

Hoover C. Blanton and Ruskin C. Foster, of McCutchen, Blanton, Rhodes & Johnson, of Columbia, for petitioner.

James B. Richardson, Jr. and J. Layne Birdsong, of Richardson and Birdsong, of Columbia, for respondent.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *Lanham v. Blue Cross and Blue Shield*, 338 S.C. 343, 526 S.E.2d 253 (Ct.App.2000). We affirm as modified.

## FACTS

We adopt the Court of Appeals' statement of facts, as follows:

On February 13, 1986, Melvin Lanham went to his doctor for an annual physical. The physical exam revealed Lanham's liver was swollen. Lanham subsequently received a letter indicating a blood test had revealed a slight elevation in liver function tests. In the letter, the doctor stated "I do not feel that any further treatment or investigation is indicated at this point in time. I do think that you need a periodic evaluation of your liver function studies and would suggest that we obtain a blood test on you in about six months." On September 11, 1986, Lanham returned for the follow-up blood test. The second test also indicated an elevated SGOT and SGPT level. Other values associated with liver function were normal. The doctor advised him to follow up with periodic blood tests.

On April 26, 1988, Lanham returned for another annual physical. The doctor's report from that visit states: "The patient was followed by Dr. Harold Miller for a number of years and has been told in the past that he has had a slight elevation of his hepatic enzymes. He underwent extensive studies in reference to this. The exact studies are unknown by the patient whether he had a hepatitis profile, etc." After more blood tests, Lanham received a letter from his

doctor stating: "Your liver function studies have markedly improved since last year and almost are back to completely normal. Your kidney function is normal." The doctor told Lanham he "did not feel that he needed to have any further studies or tests done at that point in time."

On April 29, 1991, Lanham applied for health insurance coverage from Blue Cross. As part of his application, he completed an extensive questionnaire regarding his past medical history. On the questionnaire, Lanham checked yes beside the question regarding digestive system problems (including liver problems) and underlined gastritis, but did not provide additional information regarding his liver. On July 15, 1991, Blue Cross issued a policy to Lanham with a rider excluding coverage for a hip problem.

In November of 1991, Lanham had blood work done in connection with an unrelated application for life insurance. On November 6, 1991, he went back to his doctor and advised him that based on the lab work, he had been turned down for life insurance. The doctor repeated the blood work and discovered one of Lanham's enzymes had increased to a point requiring further investigation. He referred Lanham to a specialist and suggested Lanham consider having a liver biopsy.

In December of 1991, the specialist diagnosed Lanham with hepatitis C. In July of 1992, Blue Cross notified Lanham it had canceled his health insurance due to alleged fraudulent misrepresentations in his application. On November 4, 1992, Lanham filed suit asserting breach of contract and bad faith refusal to pay. Blue Cross answered and counterclaimed asserting it would not have issued the policy but for misrepresentations in the application. The suit was dismissed with leave to restore in 1994 and restored on March 2, 1995.

Blue Cross moved for summary judgment on January 21, 1997. On January 24, 1997, Lanham requested discovery of various items including Blue Cross's underwriting guidelines. Blue Cross moved to quash the discovery request asserting its underwriting standards are protected as trade secrets. On February 3, 1997, Lanham made a second motion to compel discovery.

During the hearing on Blue Cross's motion for summary judgment, Blue Cross relied heavily on an unpublished opinion by this court. Blue Cross also presented an affidavit from an employee who stated the insurer would not have issued Lanham's policy had it known of Lanham's liver problems. Lanham argued he had not been allowed adequate discovery and the question of materiality was a jury issue. Lanham renewed his motion to compel discovery. Without ruling on Lanham's discovery motion, the court granted summary judgment in favor of Blue Cross.

338 S.C. at 345–346, 526 S.E.2d at 254–255. The Court of Appeals reversed the trial court's ruling, finding a genuine issue of material fact existed as to whether Lanham made a false statement with the actual intent to deceive; it also held that whether Lanham's application answers were material was a matter for the jury. Finally, the Court of Appeals remanded the issue of Lanham's motion to compel to the trial court.

## ISSUES

1. Should the trial court have ruled on Lanham's motion to compel prior to ruling on Blue Cross' motion for summary judgment?

2. Did the Court of Appeals err in reversing the grant of summary judgment to Blue Cross ?

## STANDARD OF REVIEW

An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP. *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Under Rule 56(c), the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman,* 306 S.C. at 115, 410 S.E.2d at 545. With respect to an issue upon which the nonmoving party has the burden of proof, this initial responsibility may be discharged by pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case. *Id.* In determining whether any

triable issues of fact exist, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688 (2000). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E.2d 447 (1976).

## 1. MOTION TO COMPEL DISCOVERY

■ Blue Cross moved for summary judgment on January 21, 1997. In support of its motion, it filed the affidavit of Sandra Laney, manager of underwriting for individual policies, to the effect that "[h]ad Blue Cross and Blue Shield ... known of the liver condition, coverage would not have been offered. This condition and the Plaintiff's deceitful statement materially affects the acceptance of the risk." In response to the motion for summary judgment, Lanham filed a notice of taking the deposition of Blue Cross, and requests for production. In these motions, Lanham specifically advised Blue Cross that he was seeking:

Defendant's underwriting standards, policies and procedures regarding the health disorders which the defendant contends would have precluded the issuance of plaintiff's health insurance policy.

All policies of the defendant regarding the part played by an applicant's medical history in the decision to issue a family or individual health insurance policy.

All policies of the defendant concerning the investigation and review of the medical records or an applicant for health insurance.

All underwriting standards, policies, and procedures of the defendant concerning health disorders which the defendant contends would have precluded the issuance of plaintiff's health insurance policy.

Blue Cross responded with a motion for protective order or to quash, contending its underwriting standards, policies, and procedures were trade secrets. Lanham moved to compel Blue Cross's deposition and production of documents. The summary judgment hearing was held on March 24, 1998. The court declined to rule on plaintiff's motion to compel and granted Blue Cross summary judgment from the bench.

 Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp., supra.* Summary judgment is a drastic remedy, which should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues. *Baughman v. American Tel. & Tel. Co., supra.* This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery. *Id.*

Here, without being able to conduct further discovery, there was simply no way for Lanham to respond to Blue Cross's claim that his failure to divulge his elevated enzymes was material to its decision to accept the risk. Given that all standards, statistics, procedures, etc., relative to Blue Cross's decision to insure were within its sole possession, we find the trial court erred in ruling on the summary judgment motion without first ruling on Lanham's motion to produce and motion to compel.[1] Accordingly, we affirm the Court of Appeals' remand of this issue.

## 2. SUMMARY JUDGMENT

The Court of Appeals reversed the grant of summary judgment to Blue Cross, finding a) there was a material

---

1. Blue Cross contends Lanham was required to file an affidavit pursuant to Rule 56(f), SCRCP, to the effect that he had insufficient information upon which to submit an affidavit. We find counsel's representation to the court that Lanham was in need of further discovery sufficient.

question of fact whether Lanham intended to deceive Blue Cross, and b) that whether Lanham's answers on the application were material was a question of fact for the jury.

S.C.Code Ann. § 38–71–40 (2002) states:

The falsity of any statement in the application for any policy covered by this chapter does not bar the right to recovery thereunder unless the false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

 It has long been the law of this state that in order to void a policy of insurance on the ground that fraudulent representations were made in the procuring of such policy, the burden of proof rests upon the insurer to show, by clear and convincing evidence, not only that the statements complained of were untrue, but in addition thereto that their falsity was known to the applicant, that they were material to the risk, were relied on by the insurer, **and** that they were made with intent to deceive and defraud the company. *Smiley v. Woodmen of the World,* 249 S.C. 461, 154 S.E.2d 834 (1967); *Hood v. Security Ins. Co. of New Haven,* 247 S.C. 71, 145 S.E.2d 526(1965); *Small v. Coastal States Life Ins. Co.,* 241 S.C. 344, 128 S.E.2d 175(1962); *Metropolitan Life Ins. Co. v. Bates,* 213 S.C. 269, 49 S.E.2d 201(1948).[2] Accordingly, contrary to the Court of Appeals' ruling, to have been entitled to summary judgment, Blue Cross had to show both a false statement made with the intent to deceive **and** that the statement was material to either acceptance of the risk or the hazard assumed.[3] It failed to do so.

---

**2.** Although these cases were decided pursuant to earlier statutes, the predecessor statutes all contain language virtually identical to S.C.Code Ann. § 38–71–40.

**3.** Pursuant to § 38–71–40, a false statement made with the intent to deceive may void a policy if it either materially affected the risk or the hazard assumed. However, whether any misrepresentation materially affected the hazard assumed in this case was not argued by Blue Cross at the summary judgment hearing; it argued only that Lanham had answered falsely and that the false answer was material to the risk. The Court of Appeals did not rule upon whether the omission was material to the hazard assumed. Accordingly, we need not address the issue here.

 Sometime between 1979–1981, Lanham's family physician, Dr. Miller, took some blood and told him his liver enzyme count was either high or low; over the course of time, his tests returned to normal so Dr. Miller did not advise any further treatment. There are no medical records in the appendix from Dr. Miller. The only other physician Lanham saw prior to applying for health insurance with Blue Cross was Dr. Luce, whom he first saw in February 1986 when Dr. Miller retired. Dr. Luce advised Lanham there was a "very slight abnormality as far as [his] liver function studies" were concerned but that no further treatment or investigation was warranted at that time. Dr. Luce suggested a periodic evaluation of his liver function studies and suggested a blood test in about six months. Six months later, it appears Lanham's enzyme levels tested high for both SGOT (111) and SGPT (176). However, there is no indication in the record Lanham was ever advised of these results.[4] Two years later, on April 26, 1988, Dr. Luce advised Lanham his "liver function studies are markedly improved since last year and almost back to completely normal." Dr. Luce advised he did not feel any further studies or test were needed at this point in time.

Question 17D of Blue Cross's application asked whether Lanham had, in the past 10 years, had a "diagnosis of, advice for, indication of, symptoms related to,[5] treatment for, or accident or injury related to any of the following systems, diagnoses, disorders, diseases, conditions or symptoms?" Subsection D specifically referenced "liver," along with numerous other systems.

 Viewing the evidence in the light most favorable to Lanham, it cannot be said, as a matter of law, that he made a false statement in his application with the actual intent to deceive. Given the fact that he was repeatedly told that there were only slight elevations, when coupled with the ambiguous language of Question 17D, we find the issue of whether he made a false representation with the actual intent to deceive presents a jury question. *Accord Smiley v. Woodmen of the*

---

4. Dr. Luce could not find any record in his file that he had corresponded with Lanham concerning the Sept. 1986 results.

5. Dr. Luce testified that Lanham had no other symptoms associated with underlying liver disease.

*World Life Ins.*, 249 S.C. 461, 154 S.E.2d 834 (1967)(jury question as to whether life insurance applicant misrepresented his health with intent to deceive insurer notwithstanding insured's answering "no" to numerous questions regarding hospital treatment and medications, when insured had in fact been hospitalized for six days the year prior to his application).

In order to be entitled to summary judgment, Blue Cross would have to demonstrate that there is no genuine issue of material fact that Lanham made a false statement with the actual intent to deceive **and** that the statement materially affected either the acceptance of the risk or the hazard assumed. Given our holding that whether Lanham made a false representation with the intent to deceive is a matter for the jury in this case, Blue Cross was not entitled to summary judgment. Accordingly, we affirm the reversal of summary judgment.

Lanham's motion to compel discovery is remanded to the circuit court.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.