## 17218

GREENVILLE COMMUNITY HOTEL CORPORATION, Respondent, v. ALEXANDER SMITH, Incorporated, Appellant

(95 S. E. (2d) 262)

240

*Messrs. Williams & Henry,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Respondent,*

*Messrs. Williams & Henry,* of Greenville, *for Appellant,*

November 7, 1956.

LEGGE, Justice.

Greenville Community Hotel Corporation, owner and operator of the Poinsett Hotel in Greenville, South Carolina, brought this action against Alexander Smith, Inc., to recover damages for alleged breach of warranty in respect of certain carpeting purchased for use in said hotel. Defendant appeals from an order permitting amendment of the complaint before trial.

Following are the allegations of the complaint, condensed as far as possible:

1. Plaintiff, a South Carolina corporation, owns and operates the Poinsett Hotel in the city of Greenville.

2. Defendant, a corporation having its principal place of business in Yonkers, N. Y., and also doing business and maintaining a resident agent in Greenville County, is a large producer and seller, of carpeting.

3. In December, 1950, plaintiff ordered and purchased from defendant a large quantity of green carpeting for use in the plaintiff's hotel, such carpeting having been ordered as the carpeting manufactured by the defendant and in reliance upon defendant's representations that it was of first quality and color fast.

4. For satisfactory service in a hotel carpeting of good quality is required, and carpeting of inferior quality or the colors in which are not fast is substantially worthless to plaintiff. The carpeting ordered and purchased by plaintiff from defendant in December, 1950, was contracted for directly between plaintiff and defendant, but in accordance with the latter's sales policy the order cleared through one of its sales outlets as broker.

5. In selling the said carpeting in December, 1950, defendant, fully knowing plaintiff's needs, represented and warranted that the carpeting so purchased by plaintiff was of defendant's own manufacture, of good quality and fast color, and entirely suitable to plaintiff's needs; and plaintiff made the purchase in reliance upon such representations and warranty.

6. As the purchase price of the aforementioned carpeting, plaintiff paid to defendant through the latter's broker two thousand seven hundred forty ($2,740.00) dollars, which was the full price charged by defendant to large purchasers such as the plaintiff for carpeting fully complying with the representations and warranties aforesaid.

7. Upon receipt of the carpeting so purchased, plaintiff paid the freight charges thereon, amounting to approximately sixty-eight ($68.00) dollars, and had the carpeting laid in a number of its hotel rooms and in one of its corridors at a further cost of approximately two hundred fifty ($250.00) dollars.

8. Notwithstanding the fact that the carpeting so purchased received exceptionally good care at the hands of the plaintiff and was periodically cleaned with approved materials and by approved methods, said carpeting, which plaintiff is now informed and believes had been manufactured by someone other than the defendant, soon began to fade and proved wholly unsuitable for the needs and purposes of the plaintiff, in consequence whereof plaintiff has been required at heavy expense to replace it with other new carpeting.

9. Carpeting of the grade purchased by the plaintiff and as represented and warranted by the defendant should last ten or twelve years at least; but the carpeting delivered by the defendant to the plaintiff as aforesaid became wholly unusable after approximately two years.

10. In an effort to be cooperative with the defendant, the plaintiff left some of the defective carpeting in place longer than it would have otherwise, so that it might be

inspected by the defendant; and the pressence of such faded, defective carpeting adversely affected the reputation of plaintiff's hotel.

11. The defendant, after having inspected the defective carpeting, recognized and admitted its defective condition and paid to the plaintiff six hundred eighty-two and 50/100 ($682.50) dollars, which plaintiff accepted on account, but not in final settlement, of its claims against the defendant.

12. The aforesaid representations and warranties of the defendant were false, and the defendant, in delivering the goods, violated and broke its warranties and representations.

13. By reason of the premises the defendant is indebted to the plaintiff for the full purchase price of the carpeting plus freight and the cost of laying the defective carpeting, and interest thereon, but is entitled to credit for the partial payment it has made on account.

The prayer was for judgment in the amount of two thousand three hundred seventy-five and 50/100 ($2,375.50) dollars, with interest thereon at the legal rate from the last day of December, 1950, and for the costs of the action.

The action was commenced in June, 1954. By a formal order dated April 1955, Judge Bellinger, then presiding in the Thirteenth Judicial Circuit, granted plaintiff's motion to amend the aforesaid complaint as follows:

1. By striking from paragraphs 3, 4 and 5, and from the prayer, the words "December, 1950", and inserting instead "September, 1951".

2. By striking from paragraph 6 the words "two thousand seven hundred forty ($2,740.00) dollars," and inserting instead "five hundred eighty and 16/100 (580.16) dollars".

3. By striking from paragraph 7 the words "sixty-eight ($68.00) Dollars", and inserting instead "eight and 90/100 ($8.90) dollars, with sales tax amounting to seventeen and 40/100 ($17.40) dollars".

4. By striking from paragraph 7 the words "two hundred fifty ($250.00) dollars", and inserting instead "forty-seven and 30/100 ($47.30) dollars".

5. By striking the whole of paragraph 11, and inserting instead the following:

"That the defendant, after inspecting the defective carpetting aforementioned, recognized and admitted its defective condition and requested the plaintiff to immediately take up and remove said carpeting, stating through its duly authorized representative that the defendant would reimburse plaintiff for the cost of the same".

6. By striking from the prayer the words "two thousand three hundred seventy-five and 50/100 ($2,375.50) dollars", and inserting instead "six hundred fifty-three and 76/100 ($653.76) dollars".

The "amendment" thus sought and allowed did not pertain to the cause of action set out in the complaint, but effected its elimination and the substitution of another, and wholly unrelated, cause of action in its stead. As stated by counsel for the respondent in oral argument, the carpeting purchased in December, 1950, was for a hotel operated by the plaintiff in another city; and there is no suggestion that the purchase in September, 1951, for the Greenville hotel, was in anywise connected with the December, 1950, transaction.

Section 10-692 of the 1952 Code reads as follows:

"The court may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding by (a) adding or striking out the name of any party, (b) correcting a mistake in the name of a party or a mistake in any other respect, (c) inserting other allegations material to the case, or (d) when the amendment does not change substantially the claim or defense, conforming the pleading or proceeding to the facts proved."

As was pointed out in *Knight, Yancey & Co. v. Aetna Cotton Mills,* 80 S. C. 213, 61 S. E. 396, and in *Taylor v. Atlantic Coast Line R. Co.,* 81 S. C. 574, 62 S. E. 1113, 1114, there was much conflict among our earlier decisions dealing with the power of the trial court to permit amendments under this provision of the code. But by the decision last cited the following principles governing the construction and application of this provision appear to have been settled:

1. The limitation of the power of amendment under subdivision (d) to such as "does not change substantially the claim or defense" is applicable only to amendments proposed while the court is hearing the evidence, or after it has heard it.

2. The power of the court, under subdivision (b), to allow amendment "correcting a mistake in the name of a party or a mistake in any other respect" extends to allowance of amendment, before trial, substantially changing the plaintiff's claim, provided: (1) there is proof of a *bona fide* mistake in setting forth the cause of action, and (2) the proposed amendment relates to the same transaction or tortious act as the original complaint.

As was said by Mr. Justice Woods, speaking for the court, in *Taylor v. Atlantic Coast Line R. Co., supra:*

"Unless the amendment proposed relates to the same transaction or the same subject as the original complaint, then it is manifest the plaintiff cannot claim to have made a mistake in the matter to which his pleading relates. When, however, the plaintiff makes the mistake of supposing one of his rights has been invaded by the defendant in one transaction, or a series of transactions relating to the same subject, and discovers another and different right was * * * invaded, it is within the power of the court when it appears to be in furtherance of justice, to grant the amendment, though in strictness the amendment amounts to a change of the cause of action, or the insertion of another cause of action."

The above quoted limitation upon the power of amendment under subdivision (b) of Section 10-692 is in consonance with the requirement of Section 10-401 that civil actions in courts of record be commenced by service of summons. It is applicable with especial force and logic to cases such as the one at bar, where it is proposed to strike out the original cause of action and substitute a wholly unrelated one; for the term "amendment" by very definition connotes alteration, improvement or correction, and thus negates the idea of destruction or elimination of the original. Cf. 41 Am. Jur., Pleading, Section 304, pp. 499, 500.

Such limitation has been recognized and acknowledged in our more recent cases. *Coral Gables, Inc., v. Palmetto Brick Co.,* 183 S. C. 478, 191 S. E. 337; *Vernon v. Atlantic Coast Line R. Co.,* 218 S. C. 402, 63 S. E. (2d) 53; *DeLoach v. Griggs,* 222 S. C. 326, 72 S. E. (2d) 647. It was overlooked or ignored in *Mallard Lumber Co. v. Carolina Portland Cement Co.,* 134 S. C. 228, 132 S. E. 614, which does not persuade us to a contrary view, however. In that case the amendment was not by the court under Section 10-692 (then Section 436), but by the plaintiff as of course under Section 10-691 (then Section 435). Furthermore, the statement there, to the effect that the amendment should not have been stricken although it set out a cause of action unrelated to that in the original complaint, was not essential to the decision, which held that the plaintiff was precluded, by his failure to reply to the defendant's counterclaim, from setting up the cause of action so proposed.

In the case at bar allowance of the "amendment" in question was beyond the power of the court under Section 10-692; and the judgment below must therefore be reversed. Consideration of appellant's other exception becomes unnecessary.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.