**In re OCEANSIDE PROPERTIES, INC., Debtor.**

**OCEANSIDE PROPERTIES, INC., Plaintiff,**

**v.**

**CITY AND COUNTY OF HONOLULU and Title Guaranty Escrow Services, Inc., Defendants.**

**Bankruptcy No. 78–00474(1).**

United States Bankruptcy Court, D. Hawaii.

Jan. 7, 1980.

Randolph R. Slaton, Honolulu, Hawaii, for City and County of Honolulu.

James N. Duca, Honolulu, Hawaii, for debtor.

## ORDER

JON J. CHINEN, Bankruptcy Judge.

The issue before this Court is whether or not this Court should reconsider or alter the Judgment entered herein on October 31, 1979.

## FINDINGS OF FACT

On October 23, 1979, this Court entered its Findings of Fact and Conclusions of Law and directed that Summary Judgment be entered in favor of Oceanside Properties, Inc., hereafter "OPI". The Judgment was filed on October 31, 1979. On November 13, 1979, the City and County, hereafter "City", filed its Motion For Reconsideration or in the Alternative for Alteration of Judgment.

A hearing was held on City's motion on December 7, 1979. At said hearing, City asserted that this Court should reconsider or alter its Judgment filed on October 21, 1979, for the following main reasons:

1. That, even though there is a Second Amended Declaration of Horizontal Property Regime filed with the State Land Court and noted on the pertinent Transfer Certificate of Title, hereafter "TCT", the original Declaration of Horizontal Property Regime was still part of the TCT, with notice to the world that 900 parking stalls were "Reserved for the City and County of Honolulu". (The Horizontal Property Regime is hereafter referred to as "HPR".)

2. That, because the State had not filed its certificate of tax lien (excise tax), OPI cannot rely on the tax lien to set aside the Condominium Conveyance Document, hereafter "CCD".

3. That, because the CCD was held in escrow for the benefit of only the City, there was a trust in favor of City.

4. That, because Banker's Trust had participated in preventing the CCD from being recorded, OPI cannot rely on the Additional Charge Mortgage of Banker's Trust to set aside the CCD. Also, because the Additional Charge Mortgage covered a preexisting debt, Banker's Trust is not a purchaser for valuable consideration.

5. OPI was not insolvent at the time of filing of the Petition.

## CONCLUSIONS OF LAW

1. *Effect of the Second Amended HPR*

■ The city contends that the Second Amended HPR did not replace the Original

HPR and the First Amended HPR, but that the Second Amended HPR merely amended the previous HPRs. The City relies on *Greenville v. Community Hotel Corporation*, 230 S.C. 239, 95 S.E.2d 262 (1956) to support its contention.

However, the Court finds that the City's reliance on the *Greenville* case is misplaced. In the first instance, *Greenville* involves an amendment to pleadings and not an amendment to a Horizontal Property Regime. Furthermore, with respect to pleadings under the Federal Rules of Civil Procedure, the 9th Circuit Court has held that an amended pleading supercedes a prior pleading. In *Bullen v. De Bretteville*, 239 F.2d 824 (9th Cir. 1956), the Court stated:

> It is Hornbook law that an amended pleading supercedes the original, the latter being treated thereafter as non-existent. (citations omitted). Once amended, the original no longer performs any function as a pleading and cannot be utilized to aid a defective amendment. *Id* at 833.

The Hawaii Supreme Court also has held that an amended pleading replaced the previous pleading. In *Wight v. Lum*, 41 Haw. 504 (1956), the Court held that:

> The filing of the amended petition, complete in itself and not referring to any prior pleading, without objection by respondents, took the original out of the record and the amended petition became the sole statement of the petitioner's case. *Id* at 507–08.

See also *Wolbert v. Reif*, 194 Md. 642, 71 A.2d 761 (1950); *Wichman v. United States*, 553 F.2d 1104 (8th Cir. 1977); *Gravitt v. Southwestern Bell Telephone Co.*, 396 F.Supp. 948, 950 (W.D.Tex.1975).

The purpose of the Second Amended HPR, as shown in the document itself, was to consolidate all of the changes made up to date in a single instrument. If so, it is only logical to assume that the governing document would be the one containing all of the changes.

The facts show that the Second HPR was a document complete in itself. It contained just as many pages as the original HPR, which further shows that the Second Amended HPR was intended to supercede the original HPR. The only reference of the original HPR in the Second Amended HPR occurs in the "Whereas clause", where a history of the transaction is given.

The subsequent conduct of the parties, OPI and City, indicates that the Second Amended HPR superceded the previous HPRs.

Amendments subsequent to the Second HPR provide that those amendments were being made pursuant to the terms of the Second Amended HPR and not the original HPR. This shows that the governing document was the Second Amended HPR.

In addition, in seeking execution and recording of the CCD conveying the 960 parking stalls to City, the City acknowledged that it then had no interest in the parking stalls and that it wanted a conveyance to itself of those stalls. If the City owned the parking stalls under the original HPR even after execution and recording of the Second Amended HPR, the CCD was not necessary. However, the facts show a long period of negotiation and work leading to the drafting and execution of the CCD, indicating that the City felt that the CCD was necessary for it to obtain title to the parking stalls.

There is a difference between a *"First Amendment to HPR"* and a *"First Amended HPR"*. The first shows merely an intent to change some provisions in the original document, whereas the second shows an intent to supercede the original document with the amended document.

Based on all of the foregoing, the Court finds that the Second Amended HPR superceded all previous HPRs.

### 2. The State Tax Lien

■ City contends that, because the State Tax Lien was not recorded, OPI cannot rely on such tax lien to set aside the CCD. OPI contends that since the CCD is still not recorded, OPI may rely on the tax lien to set aside the CCD under Section 70(c) of the Bankruptcy Act.

The City has admitted that it has never owned and does not own the parking stalls. It has also admitted that the CCD is a conveyance document. In its Memorandum in Opposition to Motion for Summary Judgment, filed in the First Circuit Court on February 3, 1978, Exhibit E to its Memorandum in Opposition to Motion For Summary Judgment, the City stated:

"The stalls involved here are not now and never owned by the City. . . ."

"The language of the CCD clearly indicates, however, that it is a conveyance document, intended to serve as a deed to convey the stalls to the City when certain conditions have been met."

It must be also noted that the City has never challenged Banker's Trust's Additional Charge Mortgage as being void for affecting property (parking stalls) owned by City.

HRS 231–33(a)(3) reads as follows:

"(3) The interest of a party, if required to be recorded or entered of record in any public office in order to be valid against subsequent purchasers, does not arise prior to the time of such recording or entry of record."

HRS 231–33(b) provides as follows:

"(b) Any state tax which is due and unpaid is a debt due the state and constitutes a lien in favor of the state upon all property and rights to property, whether real or personal, belonging to any person liable for the tax. The lien for the tax, including penalties and interest thereon arises at the time the tax is assessed, or at the time of filing by the department of taxation of the certificate provided for by subsection (f) whichever first occurs. From and after the time the lien arises it is a paramount lien upon the property and rights to property against all parties, whether their interest arose before or after that time, except as otherwise provided in this section."

HRS 231–33(c) provides as follows:

"(c) The lien imposed by subsection (b) is not valid as against:

(1) A mortgagee or purchaser of real property, or the lien of a judgment creditor upon real property, whose interest arose prior to the recording by the department of the certificate provided for by subsection (f);"

HRS 231–33(f) provides as follows:

"(f) The department may record in the bureau of conveyances at Honolulu, . . . a certificate setting forth the amount of taxes due and unpaid, which have been returned, assessed, or as to which a notice of proposed assessment has issued. The certificate shall identify the tax or taxes involved. The certificate shall include such further information, if any, as may be required by Chapter 501 to procure a lien on registered land. The recording or filing of the certificate has the effect set forth in this section, but nothing in this section shall be deemed to require that a certificate recorded or filed by the department must include the amount of any penalty or interest, in order to protect the lien therefor . . ."

In the instant case, the State Tax Lien was assessed on November 20, 1978, based upon tax returns earlier filed. Based on such returns earlier filed, under Section 231–33(b), by November 20, 1978, the State held a paramount tax lien upon all of the real property interest owned by OPI.

HRS 231–33(c)(1) provides that a State Tax Lien is not valid against a purchaser of real property whose interest arose prior to the recording by the Department of Taxation of the certificate provided for by subsection (f).

In the instant case, since Land Court property is involved, City was required to register the CCD to perfect its interest against subsequent purchasers. HRS 501–101 and HRS 501–82. Since the CCD has not yet been recorded, City has no interest in the parking stalls protected by HRS 231–33(c)(1). Thus, the State Tax Lien prevails over City's unrecorded CCD.

### 3. Trust

■ The City contends that the CCD was placed in escrow for its benefit only and

that, upon the fulfillment of certain conditions precedent, escrow was required to record said CCD. The City claims that it had performed all of its obligations and that there was nothing else left for it to do; thus, escrow was holding the CCD in trust for its (City's) benefit.

The facts are clear that the CCD was delivered to escrow with instructions that the CCD be delivered to City when escrow was notified in writing that: (1) the Interim Construction Lender had been paid in full or there was a recorded release of the Interim Lender's Mortgage and (2) that OPI received its total development cost as provided in the CCD, or January 31, 1979, had passed, which ever occurred first.

Even though January 1, 1979 has passed, the Interim Construction Lender (Banker's Trust) has not yet been paid in full. Until it is paid in full, the CCD cannot be recorded. Thus, the escrow is for the protection of not only City, but also for Banker's Trust.

City cannot complain at the escrow arrangement, for had OPI permitted the CCD to be recorded without approval of Banker's Trust, the Bank would have foreclosed on its original mortgage, free and clear of the CCD.

And as previously discussed under the heading of (2) The State Tax Lien, in its own memorandum filed in the State Circuit Court on February 3, 1978, City had admitted that it held no interest in the parking stalls.

Based on the foregoing and other matters discussed in the original Findings of Fact, the Court finds that there is no trust by virtue of the escrow arrangement.

4. *Conduct and Status of Banker's Trust*

■ Banker's Trust first mortgage was executed and filed with the Land Court prior to the execution of the CCD. Said mortgage contained a provision that no assignment of interest in the real property covered by said mortgage may be filed without consent of Banker's Trust. A violation of said provision constituted a breach of the mortgage.

City attempted to have Banker's Trust consent to filing of the CCD with the Land Court. However, Banker's Trust refused. City contends that such refusal on the part of Banker's Trust shows that Banker's Trust was instrumental in preventing filing of the CCD. And that, since the Additional Charge Mortgage was executed and filed after execution of the CCD, City claims that the Additional Charge Mortgage cannot be used by OPI as a basis of a Section 70(e) claim.

No fraud was alleged against Banker's Trust by City. The conduct of Banker's Trust was that of a "prudent businessman." Banker's Trust did not consent to a filing of the CCD to protect its own interest. Banker's Trust was under no obligation to protect City's interest.

■ As this Court had previously stated, under the law of Hawaii, actual knowledge of a mortgage or purchase of Land Court property that is not properly filed is immaterial provided that the subsequent purchaser files first. *City and County of Honolulu v. Clarke*, 60 Haw. No. 6124 (1978).

■ Mortgagees are generally treated as the equivalent of purchasers. However, mortgagees are still required to give value to be protected under Section 70(e).

■ In the instant case, the Additional Charge Mortgage shows that it was based on a pre-existing debt. No evidence was presented to show that said Additional Charge Mortgage was given for any other consideration. The prevailing view is that a mortgage for a pre-existing debt is not given for value so as to entitle the mortgagee as a purchaser for value. 55 Am.Jur.2d "Mortgagor" Sec. 324, citing numerous cases.

The Court thus finds that Banker's Trust is not a "purchaser for value". Consequently, OPI may not rely on the rights of Banker's Trust to avoid the CCD under Section 70(e) of the Bankruptcy Act. To this extent, the Findings of Fact and Conclusions of Law dated October 23, 1979 is modified.

#### 5. *Insolvency of OPI*

Since the Court has not discussed the matter of preference, the Court finds the matter of the insolvency of OPI to be moot.

Based on the foregoing, the Court hereby amends the Findings of Fact and Conclusions of Law to show that, under the facts presented to the Court, Banker's Trust is not a purchaser for value and thus OPI cannot rely on Banker's Trust's position to set aside the CCD.

However, because OPI may still rely on the State Tax Lien to set aside the CCD which is still not noted on the TCT, the judgment entered herein is affirmed.